295 So.2d 503 (1974)
Rena Starkey ALLEMAN, Plaintiff-Appellant,
v.
SEVENTH WARD GENERAL HOSPITAL et al., Defendants-Appellees.
No. 9846.
Court of Appeal of Louisiana, First Circuit.
May 28, 1974.
Writ Refused July 1, 1974.
*504 Richard L. Eldrington, LaPlace, for plaintiff-appellant.
Henry B. Alsobrook, Jr., New Orleans, for defendants-appellees 7th Ward Gen. Hospital and Argonaut-Southwest Ins. Co.
Donald T. W. Phelps, Baton Rouge, for Dr. Donald T. Hanley, defendant-appellee.
Before SARTAIN, BAILES and VERON, JJ.
SARTAIN, Judge.
This suit alleges medical malpractice on the part of Dr. Donald T. Hanley and the Seventh Ward General Hospital located in Hammond, Louisiana. Also made defendants are Dr. Hanley's liability insurer, St. Paul Fire & Marine Insurance Company and the Argonaut Southwest Insurance Company, the liability insurer of the hospital.
Following the trial on the merits, judgment was rendered for the defendants and plaintiff has appealed. No evidence whatsoever was offered as to any negligence on the part of the Seventh Ward General Hospital and its employees and Dr. Hanley accepted sole responsibility for the operation and subsequent care and treatment of Mrs. Alleman for as long as she was in his care. In oral argument before us counsel for plaintiff frankly admitted that no case was made out against the hospital and his entire argument was directed against malpractice on the part of Dr. Hanley. We conclude that the judgment of the district court is correct and affirm.
Mrs. Rena Starkey Alleman began experiencing excessive bleeding in association with female disorders during August of 1967 and began consulting Dr. Hanley, a specialist in obstetrics and gynecology, who recommended and arranged for a hysterectomy to be performed for the plaintiff at the Seventh Ward General Hospital on October 6, 1967.
On that date Dr. Hanley, assisted by his partner, Dr. Harry M. Scarborough, also a specialist in the field of gynecology, performed the surgery which all described as a difficult hysterectomy due to several factors. The plaintiff had, in prior years, given birth twice by Caesarean section which had caused her pelvis area to be marked by adhesions and scar tissue; additionally, her bladder had become attached to the uterus itself which required that it be surgically separated from the uterus when the latter was removed.
*505 It appears, however, that apart from heavy bleeding, the operation was completed as planned without other unusual complications. Thereafter, Mrs. Alleman convalesced in the hospital until discharged on October 16. During this period of time the plaintiff began experiencing back pain which she described as acute and constant. Dr. Hanley, and the nurses' daily records, while indicating some complaint of such discomfort, reflect that while some pain was mentioned by the patient, it did not seem to be of major importance and that much of her convalescence was recorded as "good hours" and "quiet hours".
She was seen by Dr. Hanley again on October 25, with complaints of back pain. On November 15, she was examined by Dr. Scarborough who found that she was progressing satisfactorily. On December 12, while working, Mrs. Alleman passed a large quantity of fluid which she reported to Dr. Hanley who examined her on that date and who began, at that time, a series of tests to determine if a fistula had developed through which the urine was passing. These tests proved negative.
On December 28, Mrs. Alleman was seen by Dr. Hanley at his office, at which time she showed him a gray, rubbery substance which she stated had been passed from her vagina. The object was thrown into the waste basket by the doctor.
In an effort to further determine the source of the urinary leakage, Mrs. Alleman underwent, on January 3, 1968, an intravenous pyelogram (IVP) which, by the use of intravenous dye and timed photographs, displays any blockage that may be existing in the urinary process. The IVP performed on the plaintiff showed that a blockage had occurred in the left ureter which is a vein-like tube which transmits urine from the kidney to the bladder.
Thereafter, Mrs. Alleman came under the care of Dr. Redfield Bryan, a Baton Rouge urologist, who initially examined her on January 5 and determined that while the urinary system in her right side was functioning normally, that there was delayed excretion on the left side due to the blockage of the ureter. On January 7, he performed a nephrostomy, or insertion of a kidney drainage tube, as an initial effort to regain normal function of the left kidney. The kidney seemed to respond; however, on April 22, additional surgery was required in which the blocked ureter was repaired and reinserted into the bladder. In the months that followed, despite extensive attempts to save the kidney, it was eventually overcome by chronic infection and, on April 21, 1969, the kidney was removed by Dr. Bryan.
The petition herein initially alleges negligence on the part of Dr. Hanley only in connection with the insertion and removal of an indwelling catheter, a part of which Mrs. Alleman allegedly passed on December 28, 1967. The petition was supplemented on December 6, 1968, further alleging that Dr. Hanley was also negligent in allowing a foreign body to remain in petitioner after surgical close-up. On October 15, 1969, an additional supplemental petition was filed alleging general acts of medical negligence on the part of Dr. Hanley and, further, that he was negligent in failing to properly diagnose the origin of the foreign matter causing plaintiff's pain and discomfort.
Counsel for the defendant Hanley initially argues that the plaintiff has expanded the scope of this suit far beyond the allegations in the petition, to all of which it timely objected on each occasion at trial or at the taking of a deposition, and therefore, the plaintiff's suit must be restricted to the proof of negligence on the part of the defendant physician that may have occurred by the leaving of a foreign object in the body of petitioner after surgery. We think that the defendant's objection must be overruled, however, as the plaintiff, in its supplemental petition of October 15, 1969, did allege general acts of medical negligence on the part of Dr. Hanley *506 which widened the scope of the pleadings sufficiently to encompass the proof offered.
As for the merits of the plaintiff's case, however, we think, as did the trial judge, that the evidence does not establish liability on the part of Dr. Hanley.
The landmark case of Meyer v. St. Paul Mercury Indemnity Co., 225 La. 618, 73 So.2d 781 (1954) sets out the rule applicable to the care that must be exercised by physicians, surgeons, or dentists, in the following terms:
"A physician, surgeon or dentist, according to the jurisprudence of this court and of the Louisiana Courts of Appeal, is not required to exercise the highest degree of skill and care possible. As a general rule it is his duty to exercise the degree of skill ordinarily employed, under similar circumstances, by the members of his profession in good standing in the same community or locality, and to use reasonable care and diligence, along with his best judgment, in the application of his skill to the case."
The court further held in Meyer, on rehearing, that it is "incumbent on the physician, surgeon or dentist who becomes defendant in a malpractice case, to show that he is possessed of the required skill and competence indicated and that in applying that skill to the given case he use reasonable care and diligence along with his best judgment."
The thrust of plaintiff's case is that Dr. Hanley inadvertently tied off or sutured the left ureter during surgery and that, thereafter, he failed to recognize the plaintiff's complaint of backache as evidence of the blockage that he had created until it had existed for so long that the kidney had become incurably infected, leading to its eventual loss.
In support of these claims, plaintiff offered the testimony of Dr. Joseph E. Dugas, a surgeon, and Dr. F. J. Padua, a general practitioner. Dr. Padua stated that, from his examination of the facts of this particular case, there was a possibility that in the midst of stopping the bleeding in this complicated hysterectomy, Dr. Hanley unintentionally tied off the ureter, which is very similar to a blood vessel in the abdomen, and that the plaintiff should not have been discharged while experiencing post surgical backaches without it first being confirmed that there were no urinary complications.
Dr. Dugas shared the observations of Dr. Padua and further stated that Dr. Hanley had, in his opinion, failed to exercise the customary care prevalent in the community in that he (1) failed to use a retrograde catheter to identify the ureters; (2) failed to perform an intravenous pyelogram (IVP) when the complaints of back pain arose shortly after surgery; and (3) failed to use a penrose drain around the bladder. He further stated that where a patient with no history of back pain develops such symptoms after a difficult hysterectomy, that it should occur to the surgeon that he might have accidentally ligated a ureter.
In opposition to these experts, the defense relies upon the conclusions of Mrs. Alleman's urologist, Dr. Bryan, and the testimony of Dr. James C. Atkinson, a specialist in obstetrics and gynecology. Dr. Bryan, who had become thoroughly familiar with the plaintiff's history over many months of treatment, determined that the most likely cause of the blockage of the ureter was the development of scar tissue in the ureter itself which either totally closed it or reduced the blood supply to it to such an extent that its function was impaired. While he could not exclude the possibility that the ureter was closed either completely or partially by suture, he based his judgment upon the fact that the amount of back pain of which she complained was not significant enough to suggest kidney blockage after the operation. Additionally, such blockages are usually accompanied by fever, which she did not demonstrate. Also particularly significant *507 in his opinion was the fact that nine weeks passed from the date of the operation to the time she experienced the heavy discharge indicative of the forming of a fistula. Had the ureter been blocked in surgery, the fistula would have formed and the leakage would have occurred no longer than three weeks from surgery and probably within two weeks. Based upon all these facts, he concluded that the best explanation was that the presence of scar tissue formed by the plaintiff's body blocked the ureter. Upon repairing that ureter for Mrs. Alleman, he noted the presence of such scar tissue therein which he described as having the consistency of concrete.
Dr. Atkinson, an obstetrician with some sixteen years' experience in the field of obstetrics and gynecology, concurred in the opinion of Dr. Bryan that the leakage of the urine came much too long after the surgery to suggest that the ureter had been tied off by Dr. Hanley. He further testified that backache is the most frequent complaint after a hysterectomy is performed and that he found nothing in her records to indicate that the intravenous pyelogram should have been run on the patient to check kidney blockage prior to her release from the hospital. He noted that ureters could become blocked for numerous reasons and that, in this case, an inadequate blood supply as a result of her prior Caesarean sections was the most likely cause of any diseased condition.
Dr. Hanley testified that the ureters were identified during the surgery and that no suture was made during the surgery that could have blocked it, either completely or partially. He verified that the hysterectomy was a difficult one but was performed with success and without undue complications. He acknowledged that Mrs. Alleman complained of backache the day following surgery but that her complaint was vague in nature and that her difficulty seemed to be normal low back and muscle pain, usual after such an operation. His assertion was verified by Dr. Scarborough, who assisted in the surgery and who saw the plaintiff intermittently in its aftermath.
The evidence presented by the defense is persuasive in exonerating Dr. Hanley from the allegations of malpractice made herein. The weight accorded the testimony of Drs. Bryan and Atkinson, who regularly encounter the difficulty experienced by the plaintiff, must be greater than that given to the adverse physician. We therefore find that the preponderance of the evidence weighs in Dr. Hanley's favor and the plaintiff's case does not prevail. This finding encompasses also the allegations that Dr. Hanley negligently allowed a foreign substance to remain in the body of petitioner following surgery, which she allegedly passed on December 28, 1967, as previously referred to herein.
The record is inconclusive as to exactly what the object was but the plaintiff's case as it regards that issue seems to be that it was part of a penrose drain inserted in the subcutaneous tissue beneath the skin in the abdominal incision. Dr. Atkinson positively testified that it would be anatomically impossible for the drain to have migrated from the point of placement to eventual discharge from the plaintiff's vagina. Assuming, arguendo, that such an event did occur, there is absolutely no proof that this item damaged the plaintiff in any respect and, as noted by Dr. Atkinson, it was entirely remote from the eventually diseased ureter. At page 401 of the transcript, we note his testimony, to-wit:
"Q. Dr. Atkinson, do you have any opinion as to what . . as to whether or not this penrose drain could have had anything whatever to do with the obstruction that was subsequently found in the left ureter of the patient?
A. I don't see how it could since it was entirely remote from the location of the ureter . . it was completely outside of the abdominal cavity . . it was in the abdominal wall completely outside of the *508 abdominal cavity, and outside of the tuff supporting structures of the abdomen, and I fail to see any relation whatsoever with the two."
Accordingly, for the above reasons, the judgment of the district court dismissing plaintiff's suit as to all defendants is affirmed, appellant to pay all costs of this appeal.
Affirmed.